Darin M. Sands, OSB No. 106624
sandsd@lanepowell.com
**Lane Powell PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

Mathew W. dos Santos, OSB No. 155766
mdossantos@aclu-or.org
Direct Dial: (503) 552-2105
Kelly Simon, OSB No. 154213
ksimon@aclu-org.org
Direct Dial: (503) 444-7015
**ACLU Foundation of Oregon**
PO Box 40585
Portland, OR 97240

Gabriel Arkles, *Pro Hac Vice Application Pending*
garkles@aclu.org
Shayna Medley-Warsoff, *Pro Hac Vice Application Pending*
smedley@aclu.org
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212.549.2500
Facsimile: 212.549.2650

Attorneys for Proposed Defendant-Intervenor

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **PARENTS FOR PRIVACY**; **KRIS GOLLY** and **JON GOLLY**, individually [and as guardians ad litem for A.G.]; **LINDSAY GOLLY**; **NICOLE LILLIE**; **MELISSA GREGORY**, individually and as guardian ad litem for T.F.; and **PARENTS RIGHTS IN EDUCATION**, an Oregon nonprofit corporation, | Case No. 3:17-cv-01813-HZ |
| | Proposed Defendant-Intervenor Basic Rights Oregon's **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** |
| Plaintiffs, | **REQUEST FOR ORAL ARGUMENT** |

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

v.

**DALLAS SCHOOL DISTRICT NO. 2**;
**OREGON DEPARTMENT OF
EDUCATION**; **GOVERNOR KATE
BROWN**, in her official capacity as the
Superintendent of Public Instruction; and
**UNITED STATES DEPARTMENT OF
EDUCATION**; **BETSY DEVOS**, in her official
capacity as United States Secretary of Education
as successor to **JOHN B. KING, JR.**; **UNITED
STATES DEPARTMENT OF JUSTICE**;
**JEFF SESSIONS**, in his official capacity as
United States Attorney General, as successor to
**LORETTA F. LYNCH**,

Defendants.

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

**Page**

I.      LR 7-1 CERTIFICATE OF COMPLIANCE .................................................. 1

II.     MOTION ............................................................................................................ 1

III.    MEMORANDUM ............................................................................................. 1

    A.    Introduction. ........................................................................................... 1

    B.    Factual Background. ............................................................................. 2

    C.    Argument. ............................................................................................... 3

        1.    The School District's practices and student safety plan do not violate the fundamental right to privacy. ......................................... 4

        2.    The School District's practices and student safety plan do not violate Title IX. ................................................................................ 7

            a.    Plaintiffs have not alleged facts that, if true, would support a finding of discrimination on the basis of sex. ........................... 7

            b.    The injunctive relief Plaintiffs seek would discriminate on the basis of sex. ........................................................................ 10

        3.    Plaintiffs' Oregon discrimination claims fail for similar reasons as their Title IX claim. ........................................................................... 14

            a.    Plaintiffs have not alleged facts that, if true, would support a finding of discrimination in education. ..................................... 15

            b.    Plaintiffs have not alleged facts that, if true, would support a finding of discrimination in a place of public accommodation. ...................................................................... 17

            c.    The relief Plaintiffs seek is discriminatory under Oregon law. .......................................................................................... 18

        4.    The District's policies and actions do not violate the fundamental right to parent children. .......................................................................... 19

            a.    The Student Safety Plan does not violate the right to parent. ........ 19

            b.    The student survey did not violate the right to parent. ................. 20

        5.    The Student Safety Plan does not infringe on the free exercise of religion. ............................................................................................ 21

            a.    The facts alleged in the Complaint do not plausibly support an infringement of any plaintiff's ability to practice their religion in any respect. .................................................................... 21

            b.    The Student Safety Plan is neutral and generally applicable because it does not target religion. ................................................ 23

            c.    Even if strict scrutiny applies, the Student Safety Plan is narrowly tailored to serve the compelling government interests of safety and non-discrimination. .................................... 25

    D.    Conclusion. ........................................................................................... 27

PAGE i -   MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams ex rel. Adams v. Baker*,
   919 F. Supp. 1496 (D. Kan. 1996) .......................................................................................23

*State ex rel. Appling v. Chase*,
   224 Or 112, 355 P2d 631 (1960) ........................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................3, 4

*Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*,
   481 U.S. 537, 107 S. Ct. 1940 (1987).................................................................................25

*Bd. of Educ. of Highland Local Sch. Dist. v. U. S. Dept. of Educ.*,
   208 F. Supp. 3d 850, 874 (S.D. Ohio 2016) ...............................................................6, 7, 10

*Beattie v. Line Mountain Sch. Dist.*,
   992 F. Supp. 2d 384 (M.D. Pa. 2014) .................................................................................23

*Blachana, LLC v. Oregon Bureau of Labor & Industries*,
   273 Or. App. 806, 359 P.3d 574 (Or. App. 2015) ..........................................................17, 18

*Blau v. Fort Thomas Public School Dist.*,
   401 F.3d 381 (6th Cir. 2005) .............................................................................................19

*Bob Jones Univ. v. United States*,
   461 U.S. 574 (1983)......................................................................................................24, 26

*Brown v. Hot, Sexy & Safer Prods., Inc.*,
   68 F.3d 525 (1st Cir. 1995) ...............................................................................................21

*Burwell v. Hobby Lobby Stores, Inc.*,
   134 S. Ct. 2751 (2014).......................................................................................................26

*Byrd v. Maricopa Cty. Sheriff's Dep't*,
   629 F.3d 1135 (9th Cir. 2011) .............................................................................................4

*Caribbean Marine Services Co., Inc. v. Baldwin*,
   844 F.2d 668 (9th Cir. 1988) .............................................................................................4, 5

*Cheema v. Thompson*,
   67 F.3d 883 (9th Cir. 1995) ...............................................................................................25

PAGE ii - MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993)............................................................................23, 24, 25

*Crosby v. Reynolds*,
   763 F. Supp. 666 (D. Me. 1991) ...........................................................................7

*Cruzan v. Special Sch. Dist. No. 1*,
   294 F.3d 981 (8th Cir. 2002) (per curiam)............................................................8

*Daniel v. Paul*,
   395 U.S. 298 (1969)............................................................................................13

*Davis v. Monroe Cty. Bd. of Educ.*,
   526 U.S. 629 (1999)......................................................................................7, 12

*Dawson v. H&H Elec., Inc.*,
   No. 4:14-CV-00583-SWW, 2015 WL 5437101 (E.D. Ark. Sept. 15, 2015)..........11

*Dodds v. U.S. Dep't of Educ.*,
   845 F.3d 217 (6th Cir. 2016) ........................................................................10, 11

*Doe by & through Doe v. Boyertown Area Sch. Dist.*,
   276 F. Supp. 3d 324 (E.D. Pa. 2017) .................................................................2, 9

*Doe v. Boyertown Area Sch. Dist.*,
   No. 17-1249, 2017 WL 3675418 (E.D. Pa. Aug. 25, 2017) .............................6, 8, 16

*Doe v. Irwin*,
   615 F.2d 1162 (6th Cir. 1980) .............................................................................20

*Employment Division v. Smith*,
   494 U.S. 872 (1990)......................................................................................23, 24

*Evancho v. Pine-Richland Sch. Dist.*,
   237 F. Supp. 3d 267, 288 (W.D. Pa. 2017)................................................. *passim*

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) ..............................................................................4

*Fields v. Palmdale School District*,
   427 F.3d 1197 (9th Cir. 2005) ..................................................................19, 20, 21

*Finkle v. Howard Cty., Md.*,
   12 F. Supp. 3d 780, 788 (D. Md. 2014) ...............................................................11

*G.G. v. Gloucester County Sch. Bd.*,
   853 F.3d 729 (4th Cir. 2017) (Davis, J., concurring)......................................11, 12

PAGE iii -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

008863.0020/7221893.1

*Glenn v. Brumby*,
    663 F.3d 1312 (11th Cir. 2011) ...................................................................10, 11

*Goehring v. Brophy*,
    94 F.3d 1294 (9th Cir. 1996) ..............................................................................25

*G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*,
    822 F.3d 709 (4th Cir.), *cert. granted in part*, 137 S. Ct. 369, 196 L. Ed. 2d
    283 (2016) ..........................................................................................................13

*Grummett v. Rushen*,
    779 F.2d 491 (9th Cir. 1985) ................................................................................4

*Heckler v. Mathews*,
    465 U.S. 728 (1984).............................................................................................13

*Hobbie v. Unemployment Appeals Comm'n*,
    480 U.S. 136 (1987).............................................................................................11

*J.E.B. v. Alabama ex rel. T.B.*,
    511 U.S. 127 (1994).............................................................................................13

*Kastl v. Maricopa Cty. Cmty. Coll. Dist.*,
    325 Fed. App'x 492 (9th Cir. 2009) ...........................................................10, 11, 12

*Leebaert v. Harrington*,
    332 F.3d 134 (2d Cir. 2003)................................................................................20

*Meyer v. Nebraska*,
    262 U.S. 390 (1923).............................................................................................19

*Miller v. Reed*,
    176 F.3d 1202 (9th Cir. 1999) .............................................................................25

*Mozert v Hawkins County Bd. of Educ.*,
    827 F.2d 1058 (6th Cir. 1987) .............................................................................23

*N.Y. State Club Ass'n, Inc. v. City of N.Y.*,
    487 U.S. 1 (1988).................................................................................................25

*Nakashima v. Oregon State Bd. Of Educ.*,
    344 Or. 497, 185 P.3d 429 (2008) .................................................................15, 17

*Norsworthy v. Beard*,
    87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015) ......................................................10

PAGE iv - MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

*Obergefell v. Hodges,*
    135 S. Ct. 2584 (2015)...........................................................................................27

*Oona R.-S by Kate S. v. McCaffrey,*
    143 F.3d 473 (9th Cir. 1998) ..................................................................................7

*Parents United for Better Sch., Inc. v. School Dist. of Philadelphia Bd. of Educ.,*
    148 F.3d 260 (3d Cir. 1998)...................................................................................20

*Parker v. Hurley,*
    514 F.3d 87 (1st Cir. 2008)....................................................................................23

*Pierce v. Society of Sisters,*
    268 U.S. 510 (1925)...............................................................................................19

*Prescott v. Rady Children's Hosp.-San Diego,*
    265 F. Supp. 3d 1090, 1099 (S.D. Cal. 2017)........................................................2

*Snyder ex rel. R.P. v. Frankfort-Elberta Area Sch. Dist.,*
    No. 1:05-CV-824, 2006 WL 3613673 (W.D. Mich. Dec. 11, 2006)......................12

*Reese v. Jefferson School Dist. No. 14J,*
    208 F.3d 736 (9th Cir. 2000) ..................................................................................7

*Roberts v. Clark Cty. Sch. Dist.,*
    215 F. Supp. 3d 1001, 1014 (D. Nev. 2016), reconsideration denied, No.
    215CV00388JADPAL, 2016 WL 6986346 (D. Nev. Nov. 28, 2016)....................10

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984)..................................................................................13, 25, 26

*Rosa v. Park W. Bank & Tr. Co.,*
    214 F.3d 213 (1st Cir. 2000)..................................................................................10

*Rumble v. Fairview Health Servs.,*
    No. 14-CV-2037 ....................................................................................................12

*Schroer v. Billington,*
    577 F. Supp. 2d 293 (D.D.C. 2008) ...............................................................11, 12

*Schwenk v. Hartford,*
    204 F.3d 1187 (9th Cir. 2000) ..........................................................10, 11, 12

*Sherbert v. Verner,*
    374 U.S. 398, 83 S. Ct. 1790 (1963).....................................................................21

PAGE v -  MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

*Smith v. City of Salem*,
    378 F.3d 566 (6th Cir. 2004) ...................................................................10, 12

*Stone v. City & Cty. of San Francisco*,
    968 F2d 850 (9th Cir 1992), *as amended on denial of reh'g* (Aug. 25, 1992) ........................14

*Stormans, Inc. v. Wiesman*,
    794 F.3d 1064 (9th Cir. 2015) .................................................................24

*Students & Parents for Privacy v. U.S. Dep't of Educ.*,
    No. 16-cv-4945, 2016 WL 6134121 (N.D. Ill. Oct 18, 2016) ...........................................5, 6, 8

*Thomas v. Anchorage Equal Rights Comm'n*,
    165 F.3d 692 (9th Cir.), reh'g granted, opinion withdrawn on other grounds,
    192 F.3d 1208 (9th Cir. 1999) .................................................................24

*United States v. Windsor*,
    133 S. Ct. 2675 (2013) ........................................................................13

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017) ........................................................ *passim*

*York v. Story*,
    324 F.2d 450 (9th Cir. 1963) ..................................................................4

**Statutes**

20 U.S.C. § 1681 ...................................................................................9

Administrative Procedure Act, Religious Freedom Restoration Act................................................2

an act of the School District...................................................................15

Or. Rev. Stat. Ann. § 174.100..................................................................14

Or. Rev. Stat. Ann. § 659.850..................................................................15, 17

Or. Rev. Stat. Ann. § 659.850(1)...............................................................15, 16

Or. Rev. Stat. Ann. § 659A.403.................................................................14, 15, 17

Or. Rev. Stat. Ann. § 695.850..................................................................14

**Other Authorities**

34 C.F.R. § 106.33.............................................................................8

PAGE vi - MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

Fourteenth Amendment ..................................................................................4, 19, 20

Fed. R. Civ. P. 12(b)(6)...................................................................................1

https://www.dallas.k12.or.us/dallas-high-school ...........................................22

Oregon Senate Bill 2 .................................................................................16, 18

U.S. constitution..............................................................................................2

PAGE vii -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

## I.    LR 7-1 CERTIFICATE OF COMPLIANCE

Counsel for Proposed Defendant-Intervenor Basic Rights Oregon ("BRO") certify that they have conferred in good faith with counsel for the parties regarding the issues presented by this Motion to Dismiss.   Counsel for Defendants did not object.   Plaintiffs never responded to Intervenor's inquiry to meet and confer.

## II.    MOTION

Proposed Defendant-Intervenor moves to dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The basis for this Motion are set forth in the accompanying memorandum.

## III.    MEMORANDUM

### A.    Introduction.

Plaintiffs have sued Dallas School District No. 2 (the "School District") and various federal officials and agencies[1] because the School District permits a boy who is transgender ("Student A") to use locker room and restroom facilities with other boys in Dallas High School. If the School District were to withhold permission for Student A to use facilities with other boys, it would discriminate against him on the basis of sex and transgender status in violation of the Constitution, federal law, and state law, and it would put him at risk of harm.

Proposed Defendant-Intervenor Basic Rights Oregon ("BRO") is a not-for-profit organization committed to ensuring lesbian, gay, bisexual, transgender, and queer (LGBTQ) Oregonians live free from discrimination. *See* Mot. to Intervene.  BRO works throughout the state of Oregon to ensure that transgender students have safe, non-discriminatory environments in which to go to school. BRO submits this brief in support of its motion to dismiss Plaintiffs' Complaint.

Plaintiffs ask this Court to declare that the Student Safety Plan designed to prevent discrimination and bullying against Student A violates their right to privacy, free exercise, and

---

[1] Originally, Plaintiffs also sued Governor Kate Brown and the Oregon Department of Education, but those defendants are no longer parties to this action.

PAGE 1 -  MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

parental authority, and as well as Title IX and state anti-discrimination law. [2] They ask this Court to order the School District to ban boys who are transgender from boys' restrooms and locker rooms, and girls who are transgender from girls' restrooms and locker rooms. If Plaintiffs prevail, transgender students will be barred from the facilities used by all other students of their gender, and forced to use separate facilities that other students may *choose* to use, but that only transgender students will be *required* to use. This stigmatizes transgender students by singling them out and isolating them from their peers. It sends a message that the mere presence of transgender students in the facilities used by their peers is unacceptable. Transgender youth are already highly vulnerable to harassment, bullying, violence, and suicide. *See Prescott v. Rady Children's Hosp.-San Diego,* 265 F. Supp. 3d 1090, 1099 (S.D. Cal. 2017) (denying motion to dismiss where mother claimed her transgender son died by suicide following repeated, deliberate use of pronouns "she" and "her" for him by hospital staff); *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 276 F. Supp. 3d 324 (E.D. Pa. 2017) (quoting expert testimony that "[p]eer reviewed research demonstrates that as many as 45% of gender dysphoric adolescents have had thoughts of suicide compared to 17% in this age group); *Whitaker By Whitaker*, 858 F.3d at 1051 ("There is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity"); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 288 (W.D. Pa. 2017) ("transgender people as a class have historically been subject to discrimination").

The School District's practice concerning single-sex facilities does not violate any law; to the contrary, as several courts have recognized, it is the policy and practice sought by Plaintiffs that would violate Title IX and state law, as well as the Equal Protection Clause.

## B.    Factual Background.

Based on the allegations in the Complaint, Plaintiffs are two organizations and seven

---

[2] While Plaintiffs are incorrect that the federal guidance regarding transgender students issued in or prior to 2016 violated the Administrative Procedure Act, Religious Freedom Restoration Act, U.S. constitution, or any other law, BRO will not address those claims as the federal government withdrew that guidance in 2017. Compl. ¶ 39.

PAGE 2 -  MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

individuals, some of whom are students or parents of students in the School District. They object to the Student Safety Plan created by the School District to ensure that Student A may safely participate in school activities. The Student Safety Plan acknowledges Student A as "a transgender male expressing the right to access the boy's locker room at Dallas High School." Pls. Ex. A. It goes on to state that staff will receive training and instruction, that teachers will teach about anti-bullying and harassment, that the PE teacher will be first to enter and last to leave the locker room, and that Student A's locker will be in direct line of sight of the PE teacher in the coach's office. *Id*. The Student Safety Plan also states that Student A may use restrooms consistent with his identity, i.e., boys' restrooms, and lists several "Safe Adults" with whom he may share concerns. *Id*.

Students must change their clothes before and after PE class in Dallas High School. Compl. ¶ 98. There are no allegations that students undress completely or see one another's genitals while changing their clothes. There are no allegations that students are required to shower together or at all, or that students typically take showers at school, or that any of the plaintiffs wish to take showers at school. There are no allegations that students must change clothes in common areas rather than in stalls. The principal of the School District offered use of a staff lounge if students wished to change in complete privacy outside of a multi-occupancy locker room. Compl. ¶ 91. The School District is also building more facilities with more privacy options. Compl. ¶ 81. There are no allegations that Student A has ever done anything harmful to anyone at all, inside restrooms and locker rooms or outside of them, other than simply using the restroom and locker room at the same time and in the same manner as other boys.

**C.    Argument.**

Plaintiffs have not stated a plausible claim upon which relief may be granted. A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While courts must accept factual allegations as true, they should not

PAGE 3 -  MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

"assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal citations and quotation marks omitted). Nor do "unwarranted inferences" suffice to defeat a motion to dismiss. *Id.* Because Plaintiffs have not alleged sufficient facts that would plausibly entitle them to relief under the law, their claims should be dismissed with prejudice. *See Iqbal,* 556 U.S. at 679.

        **1.**      **The School District's practices and student safety plan do not violate the fundamental right to privacy.** Plaintiffs have failed to state a claim that the School District's actions have violated their fundamental right to bodily privacy. Plaintiffs are asserting a new right under the Due Process Clause that has never been recognized by any court in this country, and should not be recognized now: the right to exclude other people from common spaces.

        The Fourteenth Amendment may, in some instances, include a "privacy interest in remaining free from involuntary viewing of private parts of the body by members of the opposite sex." *Caribbean Marine Services Co., Inc. v. Baldwin*, 844 F.2d 668, 677 (9th Cir. 1988). However, a violation of this interest has typically only been found where a government official gratuitously photographed or touched the genital area of someone with a different gender. *See e.g., Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (finding cross-gender search unreasonable where, despite availability of male officers and lack of emergency, a female cadet conducted a search of a man that included having him strip to his underwear, using her hand to move his testicles and scrotum, and placing her hand in between his buttocks to search his anus); *York v. Story*, 324 F.2d 450, 452 (9th Cir. 1963) (finding that female crime victim stated a claim for violation of her privacy rights where male police officer took pictures of her in the nude for no legitimate reason over her objection and circulated those pictures among other officers).

        A government official viewing the completely naked body of a person of a different gender against their will, even in the absence an emergency, does not always constitute a violation of privacy. *See Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985) (finding no privacy violation where female guards viewed male prisoners infrequently or from a distance while they dressed,

PAGE 4 -  MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

used the toilet, showered, or underwent searches, even without applying lesser scrutiny based on the plaintiffs' status as prisoners). Furthermore, where cross-gender viewing of genitals may be avoided simply through inconvenience, there is no privacy violation; nor do privacy considerations necessarily trump anti-discrimination interests. *See Caribbean Marine Services Co., Inc.,* 844 F.2d at 677 (finding the district court abused its discretion in failing to consider the "strong governmental and public interest in nondiscriminatory hiring practices" when granting preliminary injunction to stop a plan  in which women would join men in cramped quarters with common toilets and showers).

Here, Plaintiffs have alleged no facts to suggest they have ever been forced to expose their genitals to any government official, much less any student, of any gender. They have not alleged that they must undress completely to prepare for PE. When they partially undress, they may do so in latching toilet stalls. The possibility of brief, accidental glimpses of someone through a gap in a toilet stall partition simply does not rise to the level of a violation of the constitutional right to privacy. But students concerned about the possibility of such glimpses may use the school's unisex facilities. (ECF 1, ¶ 91.) Plaintiffs have not alleged that the school permits anyone look over or under toilet stalls, or that anyone in the School District has ever done so or threatened to do so, of any gender.

In *Students & Parents for Privacy*, a federal district court in Illinois denied a motion for a preliminary injunction in a case with facts nearly identical to this one. The district court adopted the magistrate judge's Report and Recommendation, which explained:

> There is no reason why a student who does not want to do so would have to take off clothing or reveal an intimate part of his or her body outside of the private stalls. Inside the stalls, there is no meaningful risk that any part of a student's unclothed body would be seen by another person. Therefore, these protections almost entirely mitigate any potential risk of unwanted exposure either by or to any Student Plaintiff.

*Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16-cv-4945, 2016 WL 6134121, at *29 (N.D. Ill. Oct 18, 2016) ("Students R&R") (internal citation omitted); *see also Students &*

PAGE 5 -  MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

*Parents for Privacy*, 2017 WL 6629520, at *6 ("[T]he restrooms at issue here have privacy stalls that can be used by students seeking an additional layer of privacy, and single-use facilities are also available upon request. Given these protections, there is no meaningful risk that a student's unclothed body need be seen by any other person."); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 290-91 (W.D. Pa. 2017) (rejecting the school district's argument that the policy implicated any actual privacy concerns at all "given the actual physical layout of the student restrooms at the High School," which meant that "anyone using the toilets or urinals at the High School is afforded actual physical privacy from others"); *Bd. of Educ. of Highland Local Sch. Dist. v. U. S. Dept. of Educ.*, 208 F. Supp. 3d 850, 874 (S.D. Ohio 2016) (finding no evidence that allowing transgender girl to use girls' facilities "would infringe upon the privacy rights of any other students"). Again, no Student Plaintiffs are compelled to change in front of other students. Moreover, those seeking additional privacy may change in private bathroom stalls or the staff lounge. (ECF 1, ¶ 91.). What they may not do is exclude students from common facilities that match their gender identity simply because they are transgender.

Plaintiffs allege that their right to privacy is violated by the mere "risk" of being in the presence of boys who are transgender in the boys' facilities, or girls who are transgender in the girls' facilities. ECF 1, ¶ 190. But the mere presence of transgender people in the common areas of these facilities do not violate any fundamental right deeply rooted in this nation's history and tradition. No court in this country has recognized a fundamental right to exclude others from common spaces. In fact, many courts have recognized that the presence of transgender students in common restrooms or locker rooms does *not* infringe anyone's constitutional right to privacy. *Doe v. Boyertown Area Sch. Dist.*, No. 17-1249, 2017 WL 3675418, at *55 (E.D. Pa. Aug. 25, 2017) ("[H]igh school students ... have no constitutional right not to share restrooms and locker rooms with transgender students whose sex assigned at birth is different from theirs"); *Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16-cv-4945, 2016 WL 6134121, at *2 (N.D. Ill. Oct. 18, 2016) (same); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 290 (W.D. Pa. 2017)

PAGE 6 -  MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

(presence of a girl who is transgender in a girl's school bathroom did not demonstrate "any threatened or actually occurring violations of personal privacy"); *Board of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 876 (S.D. Ohio 2016) ("Highland") (school district's policy preventing a girl who was transgender from using a girl's bathroom was not substantially related to the district's interest in student privacy); *see also Crosby v. Reynolds*, 763 F. Supp. 666, 670 (D. Me. 1991) (rejecting cisgender female prisoner's claim that housing a transgender female prisoner with her violated her right to privacy).

Although Plaintiffs try to shoehorn their claimed right into the constitutional right to bodily privacy, what they are really doing is asking this Court to establish a new fundamental right has never been recognized by any court in this country, and should not be recognized now: the right to exclude people from common spaces.

> 2.      **The School District's practices and Student Safety Plan do not violate Title IX.**

Plaintiffs have not pled sufficient facts to support a claim of discrimination on the basis of sex under Title IX.  On the contrary, they seek injunctive relief that would violate Title IX by discriminating against transgender students.

> a.      **Plaintiffs have not alleged facts that, if true, would support a finding of discrimination on the basis of sex.**  To sustain a sexual harassment claim under Title IX, Plaintiffs must establish that they were students at a school receiving federal funds, that they experienced harassment based on sex, and that the harassment was "so severe, pervasive, and objectively offensive"  that it "deprive[s] the victim of access to the educational opportunities or benefits provided by the school." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000). Imputed liability requires deliberate indifference to sexual harassment of which the institution has actual knowledge. *Oona R.-S by Kate S. v. McCaffrey*, 143 F.3d 473, 477 (9th Cir. 1998) (holding that Title IX imposes on schools a "duty to take reasonable steps to remedy a known hostile environment"); *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

Plaintiffs do not allege that any student, teacher, administrator, or staff member has ever

PAGE 7 -  MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

engaged in any sexually harassing conduct against any of them.  Rather, they advance a novel claim—that a plan that allows a transgender student to use facilities that accord with his gender identity, in and of itself, creates "a sexually harassing hostile environment" sufficient to state a claim under Title IX. (ECF 1, ¶¶ 226, 227.)  It does not.

No court has ever held that permitting transgender students to use bathrooms and locker rooms consistent with their gender identity is the equivalent of sexual harassment. Such a conclusion would require finding that simply being transgender transforms the ordinary use of a bathroom or locker room into an act of harassment. The "mere presence of a transgender student in a restroom or locker room does not rise to the level of conduct that has been found to be objectively offensive, and therefore hostile, in other cases." *Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16-cv-4945, 2016 WL 6134121, at *32 (N.D. Ill. Oct. 18, 2016); *see also Doe v. Boyertown Area Sch. Dist.*, No. 17-1249, 2017 WL 3675418, at *67 (E.D. Pa. Aug. 25, 2017); *Cruzan v. Special Sch. Dist. No. 1*, 294 F.3d 981, 983-84 (8th Cir. 2002) (per curiam) (rejecting female employee's claim that a transgender female co-worker's use of the women's restrooms constituted sexual harassment).

To the extent Plaintiffs seek to rely on 34 C.F.R. § 106.33, that reliance is misplaced. The regulation states that schools "may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex."  This regulation permits, but does not require, single-sex facilities. It does not permit, much less require, that schools force transgender students out of the facilities that will be most consistent with their gender identity, health, safety, or dignity.

The Student Safety plan to which Plaintiffs object does not permit sex-based discrimination or harassment. It does not say that girls may be treated differently or worse than boys, that sexual harassment of students will be tolerated, or that school officials will abstain from taking action against students, teachers, or staff who discriminate against or harass people on the basis of sex. In fact, the opposite is true. The Student Safety Plan and School District policies Plaintiffs cite

PAGE 8 -  MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

take a strong stance against sex-based discrimination, including harassment. *See* Pl. Ex. A ("All Teachers will take time to teach about anti-bullying and harassment"); (ECF 1-1, p. 4) ("The district prohibits discrimination and harassment on any basis protected by law, including but not limited to, an individual's perceived or actual * * * sex [or] sexual orientation."); Pl. Ex. C-1 "("Every student of the district will be given equal educational opportunities regardless of … sex") Pl. Ex. D ("Sexual harassment is strictly prohibited and shall not be tolerated."); Pl. Ex. E ("Inservice training on sexual harassment and sexual violence will be developed by the District and made available to all district employees and students"); Pl. Ex. G ("Harassment, intimidation or bullying and acts of cyberbullying by students, staff and third parties toward students is strictly prohibited.").

Further, the conduct Plaintiffs allege—allowing transgender students to use single-sex facilities that accord with their gender—does not target Student Plaintiffs on the basis of sex. *See* 20 U.S.C. § 1681; *Doe by & through Doe v. Boyertown Area Sch. Dist.,* 276 F. Supp. 3d 324 (E.D. Pa. 2017) (permitting boys who are transgender to use boys' facilities and girls who are transgender to use girls' facilities does not discriminate on the basis of sex "because the School District treats both male and female students similarly"). Plaintiffs have not alleged that Student Plaintiffs are being treated differently from others, or that they are being singled out based on their sex, or that they are being harassed because they do to do not match sex stereotypes. According to the facts as stated in the Complaint, like any other students, Student Plaintiffs are permitted to use a multi-occupancy restroom and locker room consistent with their gender identity; like any other students, if they do not wish to do so, they may use a single-occupancy facility; and like any other students, they are entitled to protection against sexual harassment and bullying. The substance of Plaintiffs' claims appears to be not an objection to Student Plaintiffs receiving different or worse treatment than other students, but to transgender students receiving equal treatment. That is not a violation of their rights under Title IX.

PAGE 9 -  MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

    **b.**   **The injunctive relief Plaintiffs seek would discriminate on the basis of sex.** Instead of remedying sex discrimination, the injunctive relief Plaintiffs seek, which would bar transgender students from access to restrooms and locker rooms consistent with their gender identity, would violate Title IX and the Equal Protection Clause. *See Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050, 1053-54 (7th Cir. 2017) (Title IX and equal protection); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267 (W.D. Pa. 2017) (equal protection); *Highland*, 208 F. Supp. 3d at 874-77 (equal protection).

    The First, Sixth, Seventh, Ninth, and Eleventh Circuits have recognized that discrimination against a transgender individual is discrimination because of sex under federal civil rights statutes and the Equal Protection Clause of the Constitution. *See Kastl v. Maricopa Cty. Cmty. Coll. Dist.*, 325 Fed. App'x 492, 493 (9th Cir. 2009) (holding that under Title VII and Title IX "it is unlawful to discriminate against a transgender (or any other) person because he or she does not behave in accordance with an employer's expectations for men and women"); *Schwenk v. Hartford*, 204 F.3d 1187, 1201-03 (9th Cir. 2000); *Whitaker*, 858 F.3d at 1051; *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004); *Glenn v. Brumby*, 663 F.3d 1312, 1316-19 (11th Cir. 2011); *Rosa v. Park W. Bank & Tr. Co.*, 214 F.3d 213, 215-16 (1st Cir. 2000).

    A person's transgender status is an inherently sex-based characteristic. The incongruence between gender identity and gender designated at birth is what makes a person transgender. Treating a person differently because of the relationship between those two sex-based characteristics is literally discrimination on the basis of "sex." *See Schwenk*, 204 F.3d at 1201-1203 (finding discrimination on the basis of gender interchangeable with discrimination on the basis of sex for purposes of federal discrimination statutes); *see also Roberts v. Clark Cty. Sch. Dist.*, 215 F. Supp. 3d 1001, 1014 (D. Nev. 2016), reconsideration denied, No. 215CV00388JADPAL, 2016 WL 6986346 (D. Nev. Nov. 28, 2016); *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015).

PAGE 10 -   MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

Discrimination against people because they have undergone a gender transition is also inherently based on sex. By analogy, religious discrimination includes not just discrimination against Jews and Christians, but also discrimination against people who convert from Judaism to Christianity. *Cf. Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144 (1987) (refusing to adopt interpretation of Free Exercise Clause that would "single out the religious convert for different, less favorable treatment"). Similarly, sex discrimination includes discrimination against people who have undergone a gender transition from the gender designated for them at birth. *See Schroer v. Billington*, 577 F. Supp. 2d 293, 306-07 (D.D.C. 2008) (making same analogy); *Glenn*, 663 F.3d at 1314 (firing employee because of her "intended gender transition" is sex discrimination); *Dawson v. H&H Elec., Inc.*, No. 4:14-CV-00583-SWW, 2015 WL 5437101, at *3 (E.D. Ark. Sept. 15, 2015) (same).

In addition, discrimination against people because they are transgender is sex discrimination because it inherently rests on sex stereotypes and gender-based assumptions. As the Supreme Court recognized in *Price Waterhouse v. Hopkins*, "assuming or insisting that [individual men and women] match[] the stereotype associated with their group" is discrimination because of sex. 490 U.S. 228, 251 (1989) (plurality); *see also Kastl*, 325 Fed. App'x at 493; *Schwenk*, 204 F.3d at 1201-1203 (finding that "the perpetrator's actions stem from the fact that he believed that the victim was a man who 'failed to act like' one" and holding that this constitutes prohibited sex discrimination).   By definition, transgender people depart from stereotypes and overbroad generalizations about men and women. Indeed, "a person is defined as transgender precisely because" that person "transgresses gender stereotypes." *Glenn*, 663 F.3d at 1316; *accord Whitaker*, 858 F.3d at 1048; *Dodds*, 845 F.3d at 221; *see also Schwenk*, 204 F.3d at 1201-1203. "[A]ny discrimination against transsexuals (as transsexuals)—individuals who, by definition, do not conform to gender stereotypes—is … discrimination on the basis of sex as interpreted by *Price Waterhouse*." *Finkle v. Howard Cty., Md.*, 12 F. Supp. 3d 780, 788 (D. Md. 2014); *accord G.G. v. Gloucester County Sch. Bd.*, 853 F.3d 729, 730 (4th Cir. 2017) (Davis, J., concurring) (explaining

PAGE 11 -   MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

that discrimination against a transgender boy, who does "not conform to some people's idea about who is a boy," is discrimination on the basis of sex; *see also Schwenk*, 204 F.3d at 1201-1203 (noting that transgender individuals are inherently gender nonconforming in their "outward behavior and inward identity" and holding that "[d]iscrimination because one fails to act in the way expected of a man or woman is forbidden"); *Kastl*, 325 Fed. App'x at 493 ("[T]ransgender individuals may state viable sex discrimination claims on the theory that the perpetrator was motivated by the victim's real or perceived non-conformance to socially-constructed gender norms."); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 574-75 (6th Cir. 2004) (discriminating based on a person's failure to "act and/or identify with" one's sex assigned at birth is discrimination on the basis of sex); *Rumble v. Fairview Health Servs.*, No. 14-CV-2037 SRN/FLN, 2015 WL 1197415, at *2 (D. Minn. Mar. 16, 2015) ("Because the term 'transgender' describes people whose gender expression differs from their assigned sex at birth, discrimination based on an individual's transgender status constitutes discrimination based on gender stereotyping."); *Schroer*, 577 F. Supp. 2d at 305 (discrimination against an "inherently gender-nonconforming transsexual" is sex discrimination).

As the Seventh Circuit recently explained: "A policy that requires an individual to use a bathroom that does not conform with his or her gender identity punishes that individual for his or her gender non-conformance, which in turn violates Title IX." *Whitaker*, 858 F.3d at 1049. Indeed, "the most obvious example" of a Title IX violation is "the overt, physical deprivation of access to school resources." *Davis*, 526 U.S. at 650; *cf. Snyder ex rel. R.P. v. Frankfort-Elberta Area Sch. Dist.*, No. 1:05-CV-824, 2006 WL 3613673, at *1-2 (W.D. Mich. Dec. 11, 2006) (finding that requiring Black elementary school student to use separate restroom in response to harassment from others deprived her of "equal access to restroom facilities").

Physical exclusion carries a powerful stigma that marks transgender students as unfit to use the same facilities as others. "[I]t is humiliating to be segregated from the general population." *G.G.*, 853 F.3d at 729 (Davis, J., concurring). Our laws have long recognized the "daily affront

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." *Daniel v. Paul*, 395 U.S. 298, 307-08 (1969); *cf. Roberts v. U.S. Jaycees*, 468 U.S. 609, 625 (1984). "[D]iscrimination itself, … by stigmatizing members of the disfavored group[,] … can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group." *Heckler v. Mathews*, 465 U.S. 728, 729 (1984); *cf. J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 142 (1994) (explaining that when a juror is excluded based on gender "[t]he message it sends to all those in the courtroom, and all those who may later learn of the discriminatory act, is that certain individuals, for no reason other than gender, are presumed unqualified"); *United States v. Windsor*, 133 S. Ct. 2675, 2694 (2013) (explaining that refusal to recognize marriages of same-gender couples "tells those couples, and all the world, that their otherwise valid marriages are unworthy of federal recognition").

In the context of transgender students and separate-sex facilities, this exclusion can also cause other harms. *See Evancho,* 237 F. Supp. 3d at 294 (finding irreparable harm where girls who are transgender were marginalized through being prohibited from using girls' rooms, "causing them genuine distress, anxiety, discomfort and humiliation"); *Bd. of Educ. of the Highland Local Sch. Dist.*, 208 F. Supp. 3d at 878 (finding irreparable harm where girl who is transgender was not permitted to use a girl's room, singling her out and exacerbating her mental health conditions); *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 728 (4th Cir.), *cert. granted in part*, 137 S. Ct. 369, 196 L. Ed. 2d 283 (2016), *and vacated and remanded*, 137 S. Ct. 1239, 197 L. Ed. 2d 460 (2017) (describing evidence of daily psychological harm and repeated urinary tract infections resulting from boy who is transgender not being permitted to use boys' rooms); *Whitaker By Whitaker*, 858 F.3d at 1041 (describing harm to boy who is transgender from not being permitted to use boys' rooms, including fainting due to dehydration, stress-related migraines, and suicidal thinking).

Thus, far from violating Title IX, the School District has done what is necessary to comply with Title IX and the Equal Protection Clause. Plaintiffs have not stated a claim for which relief

PAGE 13 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

may be granted.

**3.     Plaintiffs' Oregon discrimination claims fail for similar reasons as their Title IX claim.**  Plaintiffs have failed to allege facts sufficient to state a claim that the School District's actions violate Oregon's prohibition against discrimination in education, Or. Rev. Stat. Ann. § 695.850, or public accommodation laws, Or. Rev. Stat. Ann. § 659A.403. Plaintiffs state that they have suffered discrimination based on their sex, sexual orientation and religion because they have been "deprived of the right to utilize restrooms, locker rooms and showers without encountering persons of the opposite biological sex." (ECF 1, ¶¶ 267-68). Plaintiffs further allege discrimination in education because they have not been "provid[ed] reasonable accommodations based on the health and safety needs of plaintiffs and others coming on school premises." (ECF 1, ¶ 273).  The Complaint is devoid of any facts sufficient to show discrimination under either law. To the contrary, the Complaint alleges numerous facts that show Student Plaintiffs are not receiving different or worse treatment than other students.  Rather, Plaintiffs' Complaint seeks relief that would perpetrate the very harm Oregon's anti-discrimination laws seek to prevent—discrimination based on sex and gender identity against Student A now and other transgender students in the future.

Plaintiffs ask the court to order that Student A, or any other transgender person, be excluded from school facilities used by Student Plaintiffs.  Such action by the School District, if taken, would violate Oregon anti-discrimination laws.[3]  Oregon's protections from discrimination based on sexual orientation include protections from discrimination based on gender identity. Or. Rev. Stat. Ann. § 174.100 (defining sexual orientation as "actual or perceived heterosexuality,

---

[3] While it is true that a federal court possesses the power to remedy constitutional violations through injunctive relief that violates otherwise valid state laws, Plaintiffs fail to plead facts sufficient to show a federal constitutional harm, nor does their pleading show how the discriminatory relief sought is essential to remedying the alleged harms. *See, Stone v. City & Cty. of San Francisco*, 968 F2d 850, 862 (9th Cir 1992), *as amended on denial of reh'g* (Aug. 25, 1992) (otherwise valid state laws or court orders cannot stand in the way of a federal court's remedial scheme if the action is essential to enforce the scheme).

PAGE 14 -     MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

homosexuality, bisexuality or gender identity, regardless of whether the individual's gender identity, appearance, expression or behavior differs from that traditionally associated with the individual's sex at birth").  Both Oregon's education nondiscrimination law and Oregon's public accommodation nondiscrimination law prohibit discrimination against transgender people. Or. Rev. Stat. Ann. § 659.850 (defining and prohibiting discrimination in education); Or. Rev. Stat. Ann. § 659A.403 (prohibiting discrimination in public accommodations).  If the School District excluded Student A from using the boys' bathroom because he is transgender, it would be a prima facie case of discrimination under Oregon law.  Nothing about Student Plaintiffs' purported harm due to the alleged discomfort or fear they experience changes that.

> a. **Plaintiffs have not alleged facts that, if true, would support a finding of discrimination in education.**  In order to state a claim for discrimination in education, Plaintiffs must allege facts sufficient to show that an act of the School District either (1) "unreasonably differentiates treatment" or (2) "is fair in form but discriminatory in operation" based on their sex, sexual orientation or religion. *See* Or. Rev. Stat. Ann. § 659.850(1); *see also Nakashima v. Oregon State Bd. Of Educ.*, 344 Or. 497, 185 P.3d 429 (2008) (interpreting § 659.850's differential treatment language as prohibiting "a policy or practice that affirmatively treats some persons less favorably than others based on certain protected criteria"). Under the second theory, an act with discriminatory impact is only prohibited when it is not "reasonably necessary to a program's or activity's successful operation or the achievement of its essential objectives." *Nakashima v. Oregon State Bd. Of Educ.*, 344 Or. 497, 515-16, 185 P.3d 429, 440 (2008). Section 659.850 only provides for "reasonable accommodation of an individual based on the health and safety needs of the individual" in the context of dress codes or policies.

The Complaint lacks a single factual allegation showing that the School District has taken adverse action against the Student Plaintiffs based on their sex, sexual orientation, or religion. Nor does the Complaint contain any facts that Student Plaintiffs are subject to differential treatment. Student Plaintiffs are not being denied any facilities or privileges. The Complaint alleges facts to

PAGE 15 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

the contrary: Student Plaintiffs have the option to (1) continue to share fully and equally in school facilities, or (2) use a separate facility if they so choose. There is no denial, difference, or disparity. Like all other students, Student Plaintiffs are allowed access to facilities consistent with their gender identity; like all other students, they may use a single-occupancy facility if they prefer; and like all other students, they are entitled to protection against sexual harassment and bullying. If anything, the School District has provided all students an additional advantage on the same terms as all other students.

Student Plaintiffs do not have a right to use school facilities to the exclusion of transgender students. *See*, *Doe v. Boyertown Area Sch. Dist.*, No. 17-1249, 2017 WL 3675418, at *67 (E.D. Pa. Aug. 25, 2017); *see also id.* at 55 ("[H]igh school students … have no constitutional right not to share restrooms and locker rooms with transgender students whose sex assigned at birth is different from theirs.). Discomfort with sharing spaces with transgender people is not a cognizable harm under Oregon's anti-discrimination laws.

Student Plaintiffs also fail to allege facts sufficient to show they were entitled to any accommodation based on their health and safety. The health and safety accommodation in § 659.850 (1) is rarely litigated and scant case law is available to guide this court's decision. However, the language of the statute itself suggests that the provision is limited to the review of discriminatory dress code policies. *See* Or. Rev. Stat. § 659.850 (1) ("'Discrimination' does not include enforcement of an otherwise *valid dress code or policy*, as long as the code or policy provides, on a case-by-case basis, for *reasonable accommodation of an individual based on the health and safety needs of the individual*.) (emphasis added); *State ex rel. Appling v. Chase*, 224 Or 112, 116, 355 P2d 631, 633 (1960) (finding that when language of statute is plain and understandable, then legislative intent must be gathered from the language used); *see also*, Oregon Senate Bill 2, Staff Measure Summary at 1 (Mar. 12, 2007) ("Allows employers to enforce *valid dress codes* and policies if the employer provides reasonable accommodations when necessitated by the health and safety needs of the individual."). Student Plaintiffs' complaints arise out of their

PAGE 16 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

objection to sharing school facilities with transgender people, not dress codes. To the extent an accommodation is required under Oregon law,[4] the School District provided a sufficient one—use of the staff lounge. (ECF 1, ¶¶ 91, 79).

        **b.      Plaintiffs have not alleged facts that, if true, would support a finding of discrimination in a place of public accommodation.** In order to state a claim for discrimination in a place of public accommodation, Plaintiffs must allege facts sufficient to show that the School District denied Plaintiffs "full and equal accommodations, advantages, facilities and privileges" based on their sex, sexual orientation or religion. Or. Rev. Stat. Ann. § 659A.403.[5] Plaintiffs again fail to allege even one fact that shows they were denied access to a public accommodation, nor is there any fact showing a denial based on their sex, sexual orientation or religion.

        According to the Complaint, the School District policy requires just the opposite. It provides that all students regardless of their sex, sexual orientation or religion may use facilities in accordance with their gender identity. (ECF 1, Ex. A) Providing equal access to school facilities for transgender students does not make the facilities limited or unequal for all other students. Such a finding would be absurd. Oregon courts have made clear that a place of public accommodation violates § 659A.403 when it excludes transgender people based on other peoples' desire not to share the same space. *See Blachana, LLC v. Oregon Bureau of Labor & Industries,* 273 Or. App. 806, 819, 359 P.3d 574, 581 (Or. App. 2015) (affirming agency finding that a bar violated § 659A.403 when it requested a social group primarily comprised of transgender people not return to the bar due to other patrons' perception that when the social group was present, it was a bar for transgender people). Plaintiffs have not alleged that they are being treated any differently from other students or parents based on sex, sexual orientation, or religion.

---

[4] Section 659.850 does not include an independent religious accommodation requirement. *Nakashima,* 344 Or. at 511-12 (rejecting the notion that § 659.850 adopted a duty of reasonable accommodation of religion akin to that in Title VII).
[5] To the extent Plaintiffs fail to state a claim against the School District under § 659A.403, Plaintiffs' claim that School District has aided or abetted in any discrimination as prohibited by § 659A.406 is also deficient. Plaintiffs have not alleged any acts prohibited in § 659A.409.

PAGE 17 -     MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

c.    **The relief Plaintiffs seek is discriminatory under Oregon law.**    As explained above, the relief sought by Plaintiffs would cause the very harm prohibited under Oregon law by discriminating against transgender students.    Plaintiffs' claims attempt to turn Oregon's anti-discrimination laws on their head by alleging that the School District is required to exclude Student A because he is transgender.    No such right exists in Oregon law or cases applying anti-discrimination laws.    This is no surprise because Oregon's anti-discrimination laws were created to *allow access to education and places of public accommodation regardless of gender identity.* Oregon Senate Bill 2, Staff Measure Summary at 1 (Mar. 12, 2007) ("WHAT THE MEASURE DOES: . . . Defines 'sexual orientation' to mean an individual's actual or perceived heterosexuality, homosexuality, bisexuality or gender identity, regardless of whether the individual's gender identity, appearance, expression or behavior differs from that traditionally associated with the individual's sex at birth. Establishes that a person may not discriminate based on an individual's sexual orientation with regard to employment, housing, public accommodations, public services, public education, adult foster homes and foster parenting, among other things. Declares that the opportunity to obtain employment, housing and use public accommodations, free of discrimination based on sexual orientation, religion, age, race, color, sex, national origin, or marital status, is a civil right. Allows an individual who has experienced discrimination based on sexual orientation to bring a civil action for injunctive relief, damages and attorney fees.").

When actions are taken to exclude transgender people based on others' unwillingness to share the same space, those actions are discriminatory. *See*, *Blachana*, 273 Or. App. at 819, 359 P.3d at 581 (finding a violation of Oregon's public accommodation law when a bar excluded transgender people it blamed for reduced patronage). Treating Student A differently by banning him from boys' restrooms and locker rooms would discriminate against him because his gender identity does not match his assigned sex at birth; it would carry out precisely the evil the legislature intended to prevent. Accordingly, Plaintiffs' discrimination claims based on Oregon law should be dismissed for failure to state a claim upon which relief can be granted.

PAGE 18 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

**4.    The District's policies and actions do not violate the fundamental right to parent children.** Parent Plaintiffs have failed to state a claim that their Fourteenth Amendment right to direct the education and upbringing of their children has been infringed upon by the Student Safety Plan. No case law suggests that the fundamental right to parent encompasses a right to send one's children to school absent the presence of transgender students in common areas of restrooms and locker rooms. Moreover, such a rule would violate the Equal Protection Clause, as explained in section II(B). Second, Plaintiffs have failed to state a claim that their fundamental right to parent was infringed upon by the distribution of a student survey.

   **a.    The Student Safety Plan does not violate the right to parent.** Plaintiffs allege the Student Safety Plan violates their parental liberty rights by infringing on their right to "instill moral standards and values" into their children, which include using public school facilities such as restrooms and locker rooms without the presence of transgender students. It is clear from precedent in the Ninth Circuit and others that the Fourteenth Amendment encompasses "no such specific right." *Fields v. Palmdale School District*, 427 F.3d 1197, 1203 (9th Cir. 2005).

   The Supreme Court has held the Due Process Clause of the Fourteenth Amendment encompasses a parental liberty right. *See Meyer v. Nebraska*, 262 U.S. 390 (1923) (striking down a Nebraska law prohibiting teaching of foreign language); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925) (striking down Oregon's compulsory attendance law). However, this right is not exclusive or absolute. *Fields*, 427 F.3d at 1204. The Ninth Circuit has made clear that "*Meyer, Pierce,* and their progeny 'evince the principle that the state cannot prevent parents from choosing a specific educational program,' but they do not afford parents a right to compel public schools to follow their own idiosyncratic views as to what information the schools may dispense." *Id.* at 1206 (quoting *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 533 (1st Cir. 1995)). *See also Blau v. Fort Thomas Public School Dist.*, 401 F.3d 381, 395-96 (6th Cir. 2005) (holding parents did not have a fundamental right to exempt student from school dress code). The Court concluded "the *Meyer–Pierce* right does not extend beyond the threshold of the school door," and thus parents

PAGE 19 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

have no constitutional right to force the state to run its public schools in accordance with their particular moral or religious beliefs. *Fields*, 427 F.3d at 1207.

Parents have the right to remove their students from Dallas County schools, but "once parents make the choice as to which school their children will attend, their fundamental right to control the education of their children is, at the least, substantially diminished." *Id.* at 1206. Plaintiffs have no fundamental right to prohibit the School District from allowing transgender students to use facilities consistent with their gender identity because of their own personal moral or religious opposition. Therefore, they have failed to state a claim for relief under the Fourteenth Amendment against the Student Safety Plan.

        **b.**    **The student survey did not violate the right to parent.**  Plaintiffs have also failed to state a claim under the Fourteenth Amendment with respect to the student survey. They allege La Creole Middle School administered a survey to students about "personal and family matters" without parental notice or consent. They allege the survey asked questions pertaining to such topics as the sufficiency of school and food supplies at home, drug and alcohol use, suicide, sexual orientation, and gender identity.

The Ninth Circuit in *Fields* made clear that schools may conduct surveys that inquire into personal matters, including "exposure to early trauma" or "aggression and verbal abuse." 427 F.3d at 1200 n.1. Numerous courts have also upheld school programs that "educate children in sexuality and health" without parental notification or consent. *Id.* at 1207. *See, e.g., Parents United for Better Sch., Inc. v. School Dist. of Philadelphia Bd. of Educ.,* 148 F.3d 260, 275 (3d Cir. 1998) (rejecting parental liberty challenge to school condom distribution program without parental notification); *Doe v. Irwin*, 615 F.2d 1162, 1168-69 (6th Cir. 1980) (state operation of a birth control clinic that distributed contraceptives to minors without parental consent did not violate parental liberty). Plaintiffs allege their students understood the survey as mandatory, while school officials later informed them it was voluntary. Either way, many courts have upheld programs pertaining to sexual health even when mandatory. *See, e.g., Leebaert v. Harrington,* 332 F.3d 134

PAGE 20 -     MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

(2d Cir. 2003) (upholding mandatory health classes); *Brown v. Hot, Sexy & Safer Prods., Inc.,* 68 F.3d 525 (1st Cir.1995) (upholding compulsory sex education assembly program).

The Ninth Circuit made clear that administration of school surveys, including those distributed to children pertaining to personal family and sexual matters, do not infringe upon a fundamental right, whether it be privacy or parental liberty. *Fields,* 427 F.3d at 1208. Therefore, any such actions by the School District would be subject only to rational basis review. *Id.* There can be no question that "the broad aims of education" or "the state's interest as *parens patriae*" would satisfy this level of review. *Id.* at 1210. Under the Ninth Circuit's precedent, Plaintiffs have failed to state a claim for relief that the administration of the survey violated their fundamental rights.

**5.    The Student Safety Plan does not infringe on the free exercise of religion.** Certain plaintiffs allege that the School District has violated their right to free exercise of religion. However, they have failed to allege any specific facts showing a plausible infringement on observation of their religious beliefs. Had Plaintiffs made such allegations, the Student Safety Plan would still only be subject to rational basis review, because it is a neutral, generally-applicable policy. But even if the Student Safety Plan were subject to strict scrutiny, it would survive that scrutiny, because it is narrowly tailored to serve the compelling government interests of student safety and non-discrimination.

**a.    The facts alleged in the Complaint do not plausibly support an infringement of any plaintiff's ability to practice their religion in any respect.**  The Plaintiffs have not alleged sufficient facts to support the claim that the Student Safety Plan interferes with their freedom to practice their religion. No plaintiff has alleged that the Student Safety Plan has forced them to "affirm[] a repugnant belief," penalized them for their religious beliefs, or "impede[d] the observance" of an aspect of their religion. *Sherbert v. Verner*, 374 U.S. 398, 402, 404, 83 S. Ct. 1790, 1793, 1794 (1963). The only specific plaintiffs alleged to have sincerely held religious beliefs regarding restroom and locker room use are Kris Golly, Jon Golly, and their

PAGE 21 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

children, Lindsay Golly and A.G. *See* Compl. ¶ 120. None of the four currently attend Dallas High School. Lindsay is a former student, and A.G. may attend in the future. *See* Compl. ¶ 16. None of the four have alleged that they have ever been compelled to do anything against their religious beliefs, or prevented from doing something required by their religious beliefs.

Assuming that sharing the common areas of public restrooms or locker rooms with a girl who was transgender would interfere with Lindsay's or her parents' religious practices, there are no allegations that such an event has ever occurred or is likely to occur in the future. In fact, Plaintiffs have alleged that the Student Safety Plan only gives one boy who is transgender permission to use boys' locker rooms and restrooms. *See* Compl. ¶ 261. There are no allegations that there was ever a girl who was transgender who attended Dallas High School while Lindsay did, much less that Lindsay ever met a girl who was transgender at Dallas High School, in or out of girls' locker rooms or bathrooms. Even if there were, Lindsay had the option of using the staff lounge or other single-occupancy facility if her religion required her to have complete privacy. *See e.g.* Compl. ¶ 91 (asserting that the principal offered the unisex staff lounge for changing to those students with objections to the Student Safety Plan); ¶ 79 (asserting that unisex restroom, locker room, and shower facilities are accessible in Dallas High School through the main office). Lindsay no longer attends Dallas High School.

A.G. is in eighth grade. Compl. ¶ 16. The court may take judicial notice of the fact that Dallas High School serves grades 9 to 12, as noted on the school's publicly available web site. *See* https://www.dallas.k12.or.us/dallas-high-school. A.G. and Student A do not attend school together now. There are no allegations that Student A will continue to attend Dallas High School next year, or that A.G. and Student A will ever attend the same school at the same time. Even if there were, A.G. could use the staff lounge or another single-occupancy facility if his religious beliefs required him to have complete privacy.

To the extent the Gollys object to the possibility that teachers informed Lindsay of the anti-bullying and anti-harassment policy or Student Safety Plan while she attended Dallas High School,

PAGE 22 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

they do not state a cognizable claim. "[T]he mere fact that a child is exposed on occasion in public school to a concept offensive to a parent's religious belief does not inhibit the parent from instructing the child differently." *Parker v. Hurley*, 514 F.3d 87, 105 (1st Cir. 2008); *see also Mozert v Hawkins County Bd. of Educ.*, 827 F.2d 1058 (6th Cir. 1987) (public school requiring study of evolution does not burden objecting family's free exercise rights); *Beattie v. Line Mountain Sch. Dist.*, 992 F. Supp. 2d 384, 394 (M.D. Pa. 2014) (female student could not be excluded from wrestling team to protect students against "the perceived psychological and moral degradation accompanying coeducational wrestling"); *Adams ex rel. Adams v. Baker*, 919 F. Supp. 1496, 1504 (D. Kan. 1996) (female student could not be excluded from wrestling team based on "student and parent objections based on moral beliefs").

To the extent that other plaintiffs beside the Gollys have concerns about the free exercise of their religious beliefs, those facts have not been plausibly or specifically alleged. To the extent that plaintiffs seek to claim that the Student Safety Plan may infringe on other people's religious liberty, they do not have standing to do so. Accordingly, no plaintiffs have standing to seek injunctive relief on this claim, nor has any Plaintiff asserted sufficient facts to state a claim for which relief may be granted.

> **b.** **The Student Safety Plan is neutral and generally applicable because it does not target religion.** As the Supreme Court explained in *Employment Division v. Smith*, 494 U.S. 872, 879 (1990), "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." (internal quotation marks omitted). A law that is neutral and generally applicable is constitutionally permissible if it is rationally related to a legitimate government interest. See *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

Plaintiffs claim that the Student Safety Plan is not generally applicable because it is a plan for one student. Compl. ¶ 261. This assertion reflects a misunderstanding of the term "generally

PAGE 23 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

applicable." "Generally applicable" means that the government action is not "specifically directed at" a religious practice. *Employment Division*, 494 U.S. at 878. To make that determination, the Supreme Court has looked at whether the government enforces a law "in a selective manner" to "impose burdens only on conduct motivated by religious belief" and not on similar conduct motivated by other reasons. See *Lukumi*, 508 U.S. at 543; *see also Thomas v. Anchorage Equal Rights Comm'n*, 165 F.3d 692, 701–02 (9th Cir.), reh'g granted, opinion withdrawn on other grounds, 192 F.3d 1208 (9th Cir. 1999), and on reh'g, 220 F.3d 1134 (9th Cir. 2000) ("Underinclusiveness is not in and of itself a talisman of constitutional infirmity; rather, it is significant only insofar as it indicates something more sinister."); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1082 (9th Cir. 2015) ("The mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability").

Plaintiffs have alleged no facts that could plausibly support a claim that the Student Safety Plan targets any particular religious group or religious practice, that it has been enforced selectively against people engaging in religiously-motivated conduct, or that it has as its "object" the "suppression" of anyone's free exercise of religion. *Employment Division*, 494 U.S. at 878. No facts alleged suggest that the school district implemented the policy to infringe on religious practices or beliefs. *Cf. Bob Jones Univ. v. United States*, 461 U.S. 574, 604 n.30 (1983) (finding that IRS policy barring racial discrimination does not "prefer[] religions whose tenets do not require racial discrimination over those which believe racial intermixing is forbidden").

The Student Safety Plan was explicitly "aimed to support all students." Exhibit A. The Student Safety Plan only directly speaks to the conduct of staff, administrators, and teachers, and uses the term "all" for the categories of people it addresses. While the Student Safety Plan does not directly apply to students, it can be read to imply that students may not stop Student A from using the boys' restrooms or locker rooms, and that no student may harass or bully anyone. To that extent, it affects all students equally, regardless of their religious beliefs or lack thereof. Unlike in *Lukumi*, where "almost the only conduct subject to [the challenged ordinances was] the religious

PAGE 24 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

exercise of Santeria church members," 508 U.S. at 535, the Student Safety Plan has no exceptions or carve-outs that indicate its provisions are actually intended to apply solely to members of one or more religious group.

The Student Safety Plan is generally applicable, and any burden on religious practice incidental. As such, strict scrutiny does not apply. Furthermore, the "hybrid-rights" exception does not apply because Plaintiffs have not asserted any companion constitutional claims for which they can demonstrate a "fair probability or a likelihood … of success on the merits. *Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999). Therefore, rational basis applies, and the Student Safety Plan easily meets that threshold.

> c.    **Even if strict scrutiny applies, the Student Safety Plan is narrowly tailored to serve the compelling government interests of safety and non-discrimination.** Even if Plaintiffs' had alleged sufficient facts to show that their religious exercise were in some way restricted and even if the Student Safety Plan were not generally applicable, the Student Safety Plan would survive strict scrutiny. It is narrowly tailored to the compelling government interests of promoting student safety and eliminating discrimination on the basis of sex and transgender status.

Protecting student safety is a compelling government interest. *See e.g. Goehring v. Brophy*, 94 F.3d 1294, 1300 (9th Cir. 1996) (finding that university had a compelling interest in the health and wellbeing of its students); *Cheema v. Thompson*, 67 F.3d 883, 885 (9th Cir. 1995) (finding that school district had a compelling interest in campus safety). Likewise, the Supreme Court has recognized repeatedly that the government has a compelling interest "of the highest order" in "eliminating discrimination and assuring . . . citizens equal access to publicly available goods and services." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624, 104 S. Ct. 3244, 3253 (1984); *see also id*. at 628 (discrimination "cause[s] unique evils that government has a compelling interest to prevent"); *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 n.5 (1988) (recognizing the "State's 'compelling interest' in combating invidious discrimination"); *Bd. of Directors of Rotary*

PAGE 25 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

*Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549, 107 S. Ct. 1940, 1948 (1987); *Bob Jones Univ.,* 461 U.S. at 604. Likewise, anti-discrimination laws and policies ensure "society the benefits of wide participation in political, economic and cultural life." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 625 (1984).

The School Safety Plan is narrowly tailored to serve both of these interests. The only alternative—not permitting Student A to use facilities with other boys solely because he is transgender—would perpetrate the very harms the School District sought to avoid. It would compromise Student A's safety and well-being, and it would discriminate against him on the basis of sex and transgender status. *See Section* II. Avoiding discrimination against Student A furthers the government's compelling interest in ending the "stigmatizing injury" of discrimination as well as "the denial of equal opportunities that accompanies it." *Roberts*, 468 U.S. at 625; *see also Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2783 (2014) ("The Government has a compelling interest in providing an equal opportunity to participate in the workforce without regard to race, and prohibitions on racial discrimination are precisely tailored to achieve that critical goal."). Other components of the Student Safety Plan, such as putting Student A's locker in line of sight of the PE teacher, having the PE teacher be the first one in and last one out of the locker room, and teaching students about anti-bullying and harassment, further demonstrate the precise tailoring of the Student Safety Plan to student safety needs.

The School District also sought to accommodate other students through continuing to permit them to use multi-occupancy restrooms and locker rooms precisely as they had always done, as well as permitting them to use single-occupancy facilities if they preferred. In fact, the School District went even further, preparing for construction to provide additional options. Compl. ¶ 81. Religious objections can be accommodated by providing additional privacy options to those who seek them, but when "sincere, personal opposition" to  sharing common areas with transgender people becomes official school policy, "the necessary consequence is to put the imprimatur of the [school] itself on an exclusion that soon demeans or stigmatizes those whose

PAGE 26 -    MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

own liberty is then denied." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2602 (2015). The School District had no other way to serve its paramount interest in the safety and dignity of all students than to permit Student A to use restrooms and locker rooms with other boys.

**D.    Conclusion.**

For the foregoing reasons, BRO's motion to dismiss should be granted.

DATED:  February 20, 2018

LANE POWELL PC

By    */s/ Darin M. Sands*
        Darin M. Sands, OSB No. 106624
        Telephone: (503)778.2100
        Facsimile: 503.778.2200

        Mathew W. dos Santos, OSB No. 155766
        Kelly Simon, OSB No. 154213
        ACLU Foundation of Oregon

        Gabriel Arkles, *Pro Hac Vice*
          *Application Pending*
        Shayna Medley-Warsoff, *Pro Hac Vice*
          *Application Pending*
        American Civil Liberties Union Foundation

        Attorneys for Proposed Defendant-Intervenor

PAGE 27 -     MOTION TO DISMISS AND MEMORANDUM IN SUPPORT